UNITED STATES DISTRICT COURT      SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas

**ENTERED**

September 13, 2022

Nathan Ochsner, Clerk

| | | |
|---|---|---|
| Deana Pollard Sacks, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| *versus* | § | Civil Action H-22-299 |
| | § | |
| Texas Southern University, *et. al.*, | § | |
| | § | |
| Defendants. | § | |

## Opinion on Dismissal

1.   *Background.*

Deana Pollard Sacks was a tenured professor of the Thurgood Marshall School of Law at Texas Southern University. In 2017, Sacks filed a discrimination charge with the EEOC based on race, sex, retaliation, and unequal pay. She brought suit in this district in 2018 against TSU, alleging:

(a) Title VII hostile work environment,
(b) Title VII retaliation,
(c) violation of the Equal Pay Act, and
(d) civil rights violations under 42 U.S.C. § 1983.

Sacks also sued James Douglas, Ahunanya Anga, Fernando Colon-Navarro, Ana Otero, and April Walker, alleging:

(a) civil rights violations under 42 U.S.C. § 1983, and
(b) invasion of privacy.

In *Sacks I*, Judge Werlein first dismissed all of Sacks's claims except: (1) her Equal Pay Act claim (which TSU did not move to dismiss), (2) race-based Title VII hostile work environment claim, and (3) her § 1983 claim against Douglas in his personal capacity. Each of these claims were then dismissed on

summary judgment, except the Equal Pay Act claim. At trial, the jury found in favor of TSU on the Equal Pay Act claim. Sacks ultimately lost on all claims.

Sacks now brings a new suit before this Court. Against TSU, she claims: (a) Title VII constructive discharge, (b) Equal Pay Act retaliation, and constructive discharge, and (c) breach of contract. Against the same individual defendants from *Sacks I*, with the addition of Mr. Darnell Weeden, Sacks claims: (a) Equal Pay Act retaliation and constructive discharge, and (b) civil rights violations under 42 U.S.C. § 1983. Defendants have moved to dismiss these claims.

2.    *Res Judicata.*

The rule of res judicata bars the litigation of claims that either have been litigated or should have been raised in an earlier suit.[1] Res judicata requires four elements: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions."[2] The only element in dispute here is the final one of whether the claim or cause of action is the same.

This Circuit applies a transactional test to determine whether two suits involve the same claim or cause of action, looking to whether the two cases "are based on 'the same nucleus of operative facts.'"[3] This inquiry considers "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."[4]

---

[1] *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559 (5th Cir. 2005). *See also Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 319 (1927).

[2] *Test Masters*, 428 F.3d at 571.

[3] *Houston Pro. Towing Ass'n v. City of Houston*, 812 F.3d 443 (5th Cir. 2016)

[4] *Petro–Hunt, L.L.C. v. United States*, 365 F.3d 385, 396 (5th Cir.2004) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(2)).

Defendants argue that Sacks's claims in *Sacks II* "stem from the same employment interactions from *Sacks I*," characterizing *Sacks II* as "essentially a 're-do' of Sacks' prior litigation,"[5] however, this characterization is misguided. Despite that Sacks's Second Amended Complaint was disorganized, conclusory, repetitive, and unspecific, it offers enough conduct to raise some distinct claims. Between August 29, 2019 and the filing of *Sacks II*, Plaintiff says that various new developments occurred (which Defendants list),[6] including a workload increase, learning negative information about TSU (ranging from civil rights violations to gender-pay discrepancies to its treatment of her colleagues), and April Walker's aggressive hostilities. Defendants argue that these new claims are insufficient to support a constructive discharge claim. However, the key issue is not whether the allegations in the second suit are sufficient to state a valid claim, but rather whether both actions involve "the same claim or cause of action."

### A.    *Title VII Constructive Termination*

Sacks did not relinquish her tenured professorship until August 2020,[7] which is after the *Sacks I* court ruled on her pleadings.[8] In assessing whether the causes of action are the same, the Court finds that Sacks's constructive termination claim here had not yet arisen at the relevant stages of her prior suit, since Sacks had still been employed by TSU. Sacks claims various new developments since August 29, 2019,[9] including Walker's aggressive confrontation, workload increase, and discovering various negative revelations

---

[5] Defendant's Motion to Dismiss and Consolidate, [Doc. 15] at 1.

[6] *See* Defendants' Reply in Support, [Doc. 22] at 4.

[7] *See* Plaintiff's SAC at ¶ 3.

[8] Sacks did not resign until *Sacks I* was well under way, after which Sacks requested amendment to include a constructive discharge claim but was denied. *See Sacks I*, 4:22-cv-3563, [Doc. 79] at 1.

[9] August 19, 2019 is the date when the court in *Sacks I* took its pleadings to be final, and Plaintiff does not dispute Defendants' reference to this date as the operative date for res judicata purposes.

about TSU (ranging from civil rights violations to gender-pay discrepancies to its treatment of her colleagues).

Regardless of whether her newly-plead facts afford her a plausible claim for relief, there is enough for a distinct claim. These facts are temporally separated from the first suit and would not have been conveniently tried in *Sacks I*. Her claimed revelations about TSU's various violations advance a different motivational underpinning compared to *Sacks I*, since many of her newly-plead grievances are more indicative of her motivations to resign than of a hostile work environment. Finally, distinct treatment of the facts would not run counter to the parties' expectations, as Defendants themselves argued in *Sacks I*, when Sacks moved for leave to amend after her resignation, that her constructive termination claim should be a separate lawsuit. In sum, Sacks's Title VII constructive termination claim is not barred by res judicata.

B.    *Equal Pay Act*

The analysis for Sacks's Title VII constructive termination claim also informs her Equal Pay Act retaliation claim. When construed generously by this Court despite her poor articulation, her pleadings do suggest that her Equal Pay Act retaliation claim has some foundation in facts that she claims to have happened after August 29, 2019.

Although Sacks claimed retaliation in *Sacks I*, that retaliation was purportedly in response to her EEOC claim. Her current Equal Pay Act retaliation claim, regardless of whether it is a Title VII claim by a new name, includes retaliation for her filing *Sacks I*. A suit claiming retaliation that occurred after and in response to *Sacks I* is not "the same claim or cause of action" as *Sacks I* itself. She does plead new facts that she claims took place in 2020, including her confrontation with Walker. Sacks's retaliation claim here is distinct and not barred by res judicata, regardless of its sufficiency.

C.    *§ 1983 Claims*

Sacks pleads § 1983 civil rights violations against the Individual Defendants, which includes Douglas, Colon-Navarro, Walker, Otero, Anga, and Weeden. Her current suit fails to plead specific post-August 29, 2019 conduct

from any of these individuals except Walker. Sacks's pleadings suggest that this § 1983 claim against Douglas, Colon-Navarro, Otero, and Anga is an attempt to re-litigate the same claim that has already been adjudicated, despite no new facts. These claims will be dismissed.

Weeden was not a party to *Sacks I*, but Sacks does not plead that Sacks violated her civil rights after August 29, 2019. Her allegations against Weeden could and should have been raised in *Sacks I*. Therefore, with the exception of Walker, Sacks's 1983 claims are barred by res judicata.

### D.    Breach of Contract

Sacks says that TSU "withheld tens of thousands of dollars" from her, refusing to pay wages that she earned under her contract; however, she fails to plead new facts for an allegation that is an unveiled attempt to re-try her Equal Pay Act claim from *Sacks I*, which she had already lost on the merits. This claim is barred by res judicata.

### 3.    *Title VII Constructive Termination*

To determine whether a constructive discharge has occurred, courts ask whether working conditions became "so intolerable that a reasonable person in the employee's position would have felt compelled to resign."[10] In this inquiry, relevant factors considered[11] include:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement

---

[10] *Aryain v. Wal–Mart Stores Texas LP*, 534 F.3d 473, 480 (5th Cir.2008) (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004)). The Supreme Court has affirmed that "Title VII encompasses employer liability for a constructive discharge." *Suders*, 542 U.S. at 143.

[11] The enumerated considerations are "not exclusive." *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292 (5th Cir. 1994).

that would make the employee worse off whether the offer were accepted or not.[12]

Sacks has not adequately pleaded her constructive discharge claim. Her post-*Sacks I* allegations, accepted as true, would nevertheless fail to state a claim for relief that is plausible on its face. Much of Sacks's new allegations is her "learning" about general transgressions of the university, which does not make her own position less tolerable. Although the list of considerations for a finding of constructive discharge may be non-exhaustive, each listed factor requires a worsening of one's own circumstances, as opposed to knowledge that others similarly situated have been wronged.

Moreover, her allegation that TSU overworked its female faculty and required her (and presumably other professors) to spend increased time dealing with new law school procedures and policies, accepted as true, would be grievances of considerably lesser severity than those contemplated by the relevant factors. Sacks has failed to state a plausible claim for constructive discharge.

4.    *Equal Pay Act*

The Equal Pay Act, in relevant part, disallows discharge or discrimination in any way "against any employee because such employee has filed any complaint."[13] These claims are analyzed under Title VII, and to state a claim for retaliation, a plaintiff must plead that: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action.[14] An "adverse

---

[12] *Perret v. Nationwide Mut. Ins. Co.*, 770 F.3d 336 (5th Cir. 2014) (citations omitted).

[13] 29 U.S.C. § 215 (a)(3).

[14] *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460 (5th Cir. 2021) (citations omitted).

employment action" is a materially adverse action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[15]

While her retaliation claim under this Act can be construed as a new claim, Sacks has not plead any facts that suggest that TSU retaliated against her after her *Sacks I* suit. It is implausible that any broad changes in school procedures and policies, or non-particularized changes to faculty workload, were designed to retaliate against Sacks. The harassment she claims to have experienced from Walker, who Sacks does not plead is any more than a peer (as opposed to a superior), does not amount to more than "petty slights, minor annoyances" which are already held to be non-actionable.[16]   Her pleadings, accepted as true, do not state facts that support a finding of an adverse employment action. Sacks's Equal Pay Act retaliation claim fails.

5.      § 1983 Claims

In addition to being barred by res judicata, Sacks's § 1983 claims against the Individual Defendants would also fail for insufficiency. Qualified immunity cases have heightened pleadings requirements, requiring "precision and factual specificity."[17] Sacks has not pleaded any facts that any person, since August 19, 2019, has engaged in misconduct in their official capacity or acted under color of state law to deprive her of her civil rights.

6.      Breach of Contract

In addition to being barred by res judicata, Sacks's breach of contract claim against TSU would also fail on sovereign immunity grounds. Plaintiff does

---

[15] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

[16] *Id.*

[17] *Nunez v. Simms*, 341 F.3d 385, 388 (5th Cir. 2003) (citing *Reyes v. Sazan*, 168 F.3d 158 (5th Cir. 1999)).

not offer any waiver of immunity by the Texas legislature, which is a requirement in breach of contract claims.[18]

7.    *Conclusion.*

   Deana Pollard Sacks's claims against Texas Southern University, Ahunanya Anga, James Douglas, Fernando Colon-Navarro, Ana Otero, April Walker, and Darnell Weeden are dismissed.

   Signed on September **12**, 2022, at Houston, Texas.

                                   Lynn N. Hughes
                                   United States District Judge

---

[18] *See, e.g., Kitchens v. Texas Dep't of Hum. Res.*, 747 F.2d 985 (5th Cir. 1984) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)); *Jackson v. Texas S. Univ.*, 997 F. Supp. 2d 613 (S.D. Tex. 2014); *Rosario v. Texas Veterans Comm'n*, No. A-18-CV-1008-RP, 2019 WL 5595234 (W.D. Tex. Oct. 29, 2019).